CGI Technologies and Solutions, Inc., Petitioner/Plaintiff,

against
New York State Office of Mental Health, ANN MARIE T. SULLIVAN, MD, in her capacity as Commissioner of the New York State Office of Mental Health, and CHRISTOPHER TAVELLA, PhD, in his capacity as Executive Deputy Commissioner of the New York State Office of Mental Health and THE STATE OF NEW YORK, Respondents/Defendants.


903156-19

McNamee Lochner P.C.
Attorneys for Petitioner/Plaintiff
(Christopher Massaroni and Michael D. Zahler, of counsel)
677 Broadway
Albany, New York 12207
McDermott Will & Emery LLP
Attorneys for Petitioner/Plaintiff (pro hac vice)
(Margaret H. Warner, Lisa M. Richman and Theodore E. Alexander, of counsel)
500 North Capitol Street NW
Washington DC 20001
Letitia James, Attorney General
Attorney for Respondents/Defendants (Adrienne J. Kerwin, Richard C. Maider and Cornelia Mogor, of counsel)
The Capitol
Albany, New York 12224


Richard M. Platkin, J.

This is a hybrid CPLR article 78 proceeding/action for declaratory and equitable relief commenced by petitioner/plaintiff CGI Technologies and Solutions, Inc. ("CGI" or "plaintiff") against respondents/defendants New York State Office of Mental Health ("OMH") and senior agency officials (collectively, "defendants").
The Verified Petition and Complaint filed by CGI (see NY St Cts Electronic Filing [NYSCEF] Doc No. 1 ["Complaint"]) alleges three causes of action, all seeking declaratory relief concerning CGI's rights to the ownership of certain intellectual property, together with related injunctive relief. Defendants move, pre-answer, for dismissal of the Complaint pursuant to CPLR 3211 (a) (4) and (7) and CPLR 7804 (f). CGI opposes the motion.
BACKGROUND
CGI is an information technology consulting company. OMH is a State agency that operates about two dozen mental-health facilities and oversees hundreds of outpatient facilities. 
CGI was the successful bidder on a Request for Proposals issued by OMH for the procurement of a new electronic medical records ("EMR") system (see NYSCEF Doc No. 5). Following extensive negotiations concerning the scope and cost of the project ("Project"), the parties signed a contract on August 27, 2013 (see NYSCEF Doc No. 8 ["Contract"]). The price for the new EMR system was in excess of $51 million, and the initial term of the agreement was four (4) years (see id.).
Although OMH originally sought to procure commercial, off-the-shelf software, the agency ultimately required, and CGI developed, a highly-customized system tailored specifically to OMH's unique needs (see Complaint, ¶ 6). For this reason, the Contract includes language concerning the ownership and use of any "Custom Work" developed by CGI in the course of the Project (see Contract, Appendix D-1, § F [3]). 
Specifically, the Contract provides that Custom Work "shall be deemed to be a work made for hire . . . and shall belong exclusively to OMH, with OMH having the sole right to obtain, hold and renew in its name, all copyrights or other appropriate protection upon payment in full for such Custom Work or portion thereof" (id. [emphasis added]). "To the extent that any such Custom Work may not be deemed to be a work made for hire, [CGI] agrees and hereby irrevocably assigns to OMH all, right, title and interest in the Custom Work . . . upon payment in full for such Custom Work (or portion thereof)" (id. [emphasis added]). Finally, insofar as the Project deliverables include or rely upon CGI's proprietary software, OMH receives "a fully paid-up, non-exclusive, perpetual, royalty-free license to use, execute, reproduce, display, perform, or merge the [proprietary software or derivative works] for governmental purposes upon payment in full for the corresponding [d]eliverable(s), or portion thereof" (id., § F [2] [emphasis added]).
The first phase of the Project called for CGI to develop and implement EMR software for [*2]the healthcare facilities operated directly by OMH. CGI allegedly completed this phase of the work by October 2017, and OMH is said to have been using CGI's custom software in its facilities since such date (see Complaint, ¶¶ 7, 27). While claiming to have fulfilled its obligations to OMH, CGI alleges that "OMH failed to live up to its end of the bargain" in numerous respects (id., ¶ 8; see NYSCEF Doc No. 4 ["Claim"], ¶¶ 45-78 [detailing allegations of OMH-caused delays and interference]).
On April 25, 2018, after repeated efforts to reach agreement with OMH regarding the extra costs and delays allegedly encountered in performing the contracted work, "CGI submitted an agreed upon Change Request extending the scope and cost of the [P]roject" (Complaint, ¶ 8). "Instead of approving the Change Request, on May 18, 2018, OMH suddenly suspended all contract activities. At the time, OMH claimed this suspension was intended as a 'pause,' and assured CGI the [P]roject would restart" (id.). Believing this representation, CGI allegedly "complied with OMH's requests, including OMH's requests that CGI provide access to [its] critical intellectual property during this 'pause'" (id.). 
Notwithstanding the foregoing, OMH denied CGI's claims for additional compensation on August 6, 2018 and terminated the contract for convenience on the same date (see id., ¶ 9; NYSCEF Doc Nos. 16, 17). It is CGI's contention that "OMH's refusal to pay for the services provided and false promises of a 'pause' were ruses contrived by [the agency] to take improper possession of CGI's intellectual property and work product without having to pay for them as required under the Contract" (Complaint, ¶ 9). At present, OMH is said to be in possession of the only copy of the source code for the EMR system developed by CGI, including the "Custom Work" to which CGI claims ownership as a result of OMH's alleged failure to make "payment in full" for such work (Contract, Appendix D-1, § F [3]; see Complaint, ¶¶ 47-50; Claim, ¶¶ 108-120).
Despite CGI's demands, OMH allegedly continues to use, modify and provide third parties with access to the EMR system and software in which CGI claims ongoing intellectual property rights (see Complaint, ¶ 10). Specifically, CGI alleges that OMH has granted third parties access to its intellectual property in connection with maintaining and expanding the EMR system (see id., ¶ 57). In addition, OMH is said to have solicited outside contractors and vendors who necessarily will be given access to CGI's "Custom Work" (id., ¶¶ 38-39, 48-49).
On January 31, 2019, CGI filed a claim in the New York State Court of Claims seeking monetary damages and declaratory relief arising from OMH's alleged breaches of the Contract (see Claim). In opposing CGI's application for preliminary injunctive relief, the State argued that the Court of Claims lacked subject matter jurisdiction over the claim for declaratory relief, which was said to be a predicate for the requested injunction.
In a Decision & Order dated May 8, 2019 (see NYSCEF Doc No. 3 ["Prior PI Decision"], p. 5), the Court of Claims (DeBow, J.) accepted the State's arguments and held that it lacked subject matter jurisdiction to issue a declaration of rights concerning the ownership of the Custom Work:
While determination of ownership of the intellectual property is certainly an issue that must be resolved by interpretation of the contract and analysis of the product of the contract, and may turn, in part, on whether the alleged custom work has been paid for, the . . . cause of action seeks only relief in the nature of declaratory judgment, which [*3]Supreme Court has the exclusive jurisdiction to grant (see CPLR 3001). In seeking a preliminary injunction to protect its claimed ownership of the property pending determination of its request for declaratory judgment, claimant will be required to demonstrate its likelihood of success in obtaining a declaratory judgment in its favor, and thus, the requested preliminary injunction is inextricably intertwined with the cause of action that is within the exclusive jurisdiction of Supreme Court. Thus, in the circumstances of this claim, because the subject of the request for equitable relief is factually and legally distinguishable and severable from the claim for money damages, as well as ultimately subject to the exclusive jurisdiction of Supreme Court, it cannot be said to be incidental to the claim for money damages flowing from the breach of contract. Thus, [the] Court is without jurisdiction to grant the equitable relief of a preliminary injunction requested in claimant's motion. Notably, claimant is not without a forum in which to pursue the equitable relief it seeks.
CGI thereafter commenced this action in Supreme Court, alleging three causes of action. The first cause of action seeks a declaration of rights to the Custom Work pursuant to CPLR 3001, together with an injunction restraining defendants from continuing to use, modify or provide third parties with access to such software (see Complaint, ¶¶ 62-73); the second cause of action seeks similar relief under CPLR 7803 (3) (see id., ¶¶ 74-77); and the third cause of action seeks similar relief under CPLR 7803 (1) (see id., ¶¶ 78-82). 
Defendants now move for dismissal of each of these causes of action. The Court heard oral argument on the motion on August 9, 2019, and this Decision & Order follows. 
ANALYSIS
A. Article 78 Claims
Defendants contend that the causes of action brought pursuant to CPLR article 78 should be dismissed on the ground that the plenary contract action in the Court of Claims constitutes an adequate and appropriate remedy, CGI has failed to state a claim for relief under CPLR article 78, and any such claim is barred by the expiration of the statute of limitations.
As a general matter, a proceeding under CPLR article 78 will not lie where there is an adequate remedy available at law (see CPLR 7801 [1]; Matter of Art-Tex Petroleum v New York State Dept. of Audit & Control, 93 NY2d 830, 832 [1999]). In particular, where the subject matter of a CPLR article 78 proceeding concerns the rights and obligations of the parties to a public contract, a plenary action sounding in contract generally constitutes the appropriate remedy:
[W]here the language of the complaint asserts violations of a plaintiff's rights under a contract and the primary thrust of the allegations is in contract, a plenary action sounding in contract is the appropriate remedy. Stated differently, where the focus of the controversy is on an agency's breach of an express contractual right, or on the agency's violation of the implied obligations of good faith, fair dealing and cooperation, a contract action is the recommended remedy(Abiele Contr. v New York City Sch. Constr. Auth., 91 NY2d 1, 8 [1997]; see City of Buffalo City Sch. Dist. v LPCiminelli, Inc., 159 AD3d 1468, 1476 [4th Dept 2018]; Steve's Star Serv. v County of Rockland, 278 AD2d 498, 499-500 [2d Dept 2003]).
In dismissing CGI's claim for declaratory and equitable relief, the Court of Claims held that "determination of ownership of the [disputed] intellectual property is certainly an issue that must be resolved by interpretation of the contract and analysis of the product of the contract, and may turn, in part, on whether the alleged custom work has been paid for" (Prior PI Decision, p. 5). This Court agrees. The primary thrust of CGI's Complaint herein is contractual in nature, and its intellectual-property claims "must be resolved through the application of traditional rules of contract law" (Abiele Contr., 91 NY2d at 8). Moreover, this action for declaratory and injunctive relief, together with the pending case for money damages in the Court of Claims, will provide CGI the opportunity to pursue each of the remedies that it claims are necessary to be accorded complete relief (see infra).
Based on the foregoing, the Court concludes that "the [Complaint] fails to state a viable claim for relief under CPLR article 78; rather, the nature of th[e] relief [sought by CGI] requires a plenary action sounding in contract" (Matter of Etna Prestige Tech., Inc. v Long Is. R.R. Co., 148 AD3d 885, 887 [2d Dept 2017]).
Accordingly, the second and third causes of action are dismissed.[FN1]

B. Declaratory Judgment
Defendants next contend that CGI's first cause of action, which seeks a declaratory judgment under CPLR 3001 and related equitable relief, must be dismissed. Specifically, defendants maintain that CGI's conversion claim in the Court of Claims seeks the same determination of ownership, and "[t]he Court of Claims matter must take precedence over the same claim[] asserted [herein]" (NYSCEF Doc No. 55 ["Defendants' MOL"], pp. 6-7). Defendants further argue in their written submissions that, even if CGI's conversion claim were dismissed by the Court of Claims, CGI's claim to ownership of the Custom Work is intertwined with the claim for breach of contract, which the Court of Claims "already has subject matter jurisdiction to decide" (id., p. 8). Thus, defendants contend, the cause of action for declaratory judgment and injunctive relief should be dismissed on the ground that CGI possesses an adequate alternative remedy in the Court of Claims.
Initially, the Court observes that, during the pendency of the instant motion practice, the Court of Claims decided the State's pre-answer motion seeking the dismissal of eight of CGI's ten causes of action, including the claim for conversion. In a Decision & Order dated July 18, 2019 (see NYSCEF Doc No. 72), the Court of Claims dismissed seven of the challenged causes of action, but declined to dismiss CGI's cause of action for conversion:
The terms of the contract indicate that CGI intended to retain ownership of its intellectual property until OMH had paid CGI in full, and CGI sufficiently alleges that it provided custom work to OMH, that OMH exercised dominion over CGI's intellectual property by downloading and using it without having paid fully, and that OMH has cut off CGI's access to its own intellectual property (p. 12). Thus, "interpret[ing] the same exact contract language" (Defendants' MOL, p. 7), the Court of Claims held that CGI had sufficiently stated a claim for conversion of its intellectual [*4]property, and it rejected defendants' contention that "[OMH's] ownership of the intellectual property/custom work is not contingent upon any payment to CGI" (id.). Accordingly, the Court is satisfied that CGI has stated a legitimate claim to ownership of the intellectual property at issue herein.
The Court further concludes that the Court of Claims case, standing alone, may not provide CGI with an adequate remedy. At the urging of the State, the Court of Claims ruled that it lacked subject matter jurisdiction over CGI's claim for declaratory relief and that CGI's request for injunctive relief was "inextricably intertwined" with the declaratory judgment claim (Prior PI Decision, p. 5). Thus, while CGI may pursue monetary damages in the Court of Claims for any proven conversion of its EMR software, the Court of Claims is unable to entertain CGI's application for declaratory and injunctive relief — forms of relief that CGI claims are necessary to prevent OMH from continuing to use and disseminate its intellectual property. Given the difference in available remedies, both cases should be allowed to go forward (cf. Main Evaluations v State of New York, 296 AD2d 852, 853 [4th Dept 2002], appeal dismissed, lv denied 98 NY2d 762 [2002]).
Further, the Court declines defendants' invitation to speculate as to how the Court of Claims would have ruled had the State framed its opposition to CGI's application for preliminary injunctive relief in a different manner (see Defendants' MOL, p. 10 ["Had the court realized the duplicative nature of the declaratory judgment and conversion claims it likely would not have suggested to CGI . . . that it has another 'forum' in which to pursue its claims for equitable relief"]). 
Indeed, in opposing CGI's application for an injunction, OMH did not rely at all on CGI's conversion claim. Rather, OMH argued that "CGI's equitable relief request is separate and distinct from the contract claims asserted in th[at] case" (NYSCEF Doc No. 60, p. 3 [emphasis added]; see id., p. 4). And in sur-reply, OMH argued that the injunction requested by CGI is "most closely related to the Claim's jurisdictionally impermissible sixth cause of action . . . for a declaratory judgment" (NYSCEF Doc No. 62, p. 3).
Finally, the fact that this Court and the Court of Claims will be called upon to interpret the Contract is not a basis for the dismissal of this action. Rather, parallel proceedings are a necessary incident of the limitations on subject matter jurisdiction imposed by law on the various courts comprising the Unified Court System, and defendants offer no sound reason why the two cases cannot move forward in a reasonably coordinated fashion.
Under the circumstances, defendants have failed to demonstrate that CGI possesses an adequate remedy in the Court of Claims or that CGI's claim for declaratory and equitable relief is duplicative of the claims remaining before the Court of Claims.
C. Prior Action Pending
Defendants further contend that the Complaint should be dismissed under CPLR 3211 (a) (4), which grants a court discretion to dismiss an action or proceeding where "there is another action [or proceeding] pending between the same parties for the same cause of action in a court of any state or the United States." Dismissal of a case due to the pendency of a prior action or proceeding is warranted "where there is a substantial identity of the parties and causes of action" (Cherico, Cherico & Assoc. v Midollo, 67 AD3d 622, 622 [2d Dept 2009]; see Matter of Schaller v Vacco, 241 AD2d 663, 663 [3d Dept 1997]). 
For substantially the reasons stated above, dismissal under CPLR 3211 (a) (4) is not warranted since "the nature of the relief sought [by CGI herein] is not the same or substantially the same" as that available in the Court of Claims (Kent Dev. Co. v Liccione, 37 NY.2d 899, 901 [1975]).
D. Injunctive Relief
Finally, defendants argue that CGI's claim for injunctive relief must be dismissed. According to defendants, the Complaint is "sparsely pled" and fails to "address how CGI expects to establish the required elements to prove entitlement to injunctive relief" (Defendants' MOL, p. 11). Defendants further argue that the money damages sought by CGI in the Court of Claims matter constitute an appropriate remedy for any proven failure by OMH to fully compensate CGI for its work.
The Court concludes that defendants have failed to demonstrate their entitlement to dismissal of CGI's prayer for injunctive relief. Preliminary or permanent injunctive relief is available upon "a showing of irreparable injury in the absence of an adequate legal remedy" (Town of Liberty Volunteer Ambulance Corp. v Catskill Regional Med. Ctr., 30 AD3d 739, 740 [3d Dept 2006]). Courts routinely find injunctive relief appropriate to prevent the loss of intellectual property to third parties, especially business competitors, due to the difficulties inherent in fashioning an award of monetary damages that fully redresses the owner for the loss of customers, business opportunities and/or goodwill (see e.g. Confidential Brokerage Servs., Inc. v Confidential Planning Corp., 85 AD3d 1268, 1269-1270 [3d Dept 2011]; Battenkill Veterinary Equine v Cangelosi, 1 AD3d 856, 859 [3d Dept 2003]; Alside Div. of Associated Materials v Leclair, 295 AD2d 873, 874 [3d Dept 2002]). 
Here, the Complaint sufficiently alleges the loss of CGI's intellectual property to competitors, as well as its own inability to market and sell the disputed intellectual property, so as to survive a pre-answer motion to dismiss (see Complaint, ¶¶ 10-11, 57-60).
Finally, contrary to defendants' suggestion in reply (see NYSCEF Doc No. 66, p. 2), the fact that the Contract prescribes a measure of monetary damages upon a termination for convenience (see Contract, Appendix D-1, § B [4] [c]) is not controlling. The Contract here does not contain the type of clear and mandatory language needed to foreclose CGI from pursuing its right under CPLR article 63 to move for appropriate injunctive relief to enforce its intellectual property rights (see id.; cf. Main Evaluations, 296 AD2d at 853). 
CONCLUSION
Accordingly,[FN2]
 it is
ORDERED that defendants' motion to dismiss is granted to the extent of dismissing the
second and third causes of action, and is denied in all other respects; and it is further
ORDERED that defendants shall answer the Verified Petition and Complaint within thirty (30) days of service of this Decision & Order with notice of entry upon their counsel.
This constitutes the Decision & Order of the Court, the original of which is being transmitted to the Albany County Clerk for electronic filing and entry. Upon such entry, plaintiff's counsel shall promptly serve notice of entry on all other parties (see Uniform Rules for [*5]Trial Cts [22 NYCRR] § 202.5-b [h] [1], [2]).
Dated: Albany, New York
August 28, 2019
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 1-38, 53-55, 57-66, 71-72.



Footnotes

Footnote 1:In view of the foregoing, the Court need not consider the other arguments for dismissal of the CPLR article 78 claims tendered by defendants.

Footnote 2:The Court has considered the parties' remaining arguments and contentions, but finds them either unavailing and/or unnecessary to reach given the disposition ordered herein.